What? It looks like every case on the calendar is being argued. Are counsel here for Murray v. Lewis? Yes, Your Honor. We haven't received a confirmation as of... That is correct, Your Honor. But it is you. I apologize for the delay. Just fine. Just go right ahead. Thank you. We were worried that maybe you had gotten lost, but you're okay. No, yes. Thank you, Your Honor. Good morning, Your Honors. Terry Law on behalf of the Petitioner Appellant, Mr. Billy Murray. Your Honors, may it please the Court. The decision in this case by the district court denying or dismissing the habeas petition by Mr. Murray was an error that must be remedied by this Court, and the only way to remedy it is a reversal or a remand so that the district court can hold the proper evidentiary hearing in this case. The error in this case was committed initially by the California Court of Appeals, and I say error, using that word loosely, realizing that the standard that this Court and that the district court looks at on a habeas matter is whether or not the California State Court or the State Court applied, either did one of two things, and in this case what is pertinent is whether or not the California Court of Appeals unreasonably applied the prevalent and the prevailing Supreme Court authority. Well, what is that? What's the Federal question in this case? The Federal question in this case, Your Honor, is whether or not the State judge in taking a plea from Mr. Murray and in actually negotiating that plea was involved in that plea negotiation process to such an extent that it impinged upon I understand what you're saying, but what's the Supreme Court decision against which this decision was rendered? That is, what Supreme Court law was violated by what happened in the State court? So that's my first question. The second question is whether you raised the Federal issue in the State proceeding so that it was exhausted. I think I'd like to address the second part of Your Honor's. It's actually the second question comes first. Yes. It doesn't matter. Yes. Let me just put the point on both of those questions, sort of bring them together. What controlling Supreme Court authority did your client cite in State court that the State court misapplied? He did not. Give me a case. He did not. He did not. Why isn't that in answer to the question? Well. Why are you here? I mean, you didn't cite Federal law. I mean, not you. That's correct. I didn't cite Federal law in State court. It's not clear that he raised a State law, a Federal crime. That is correct, Your Honor, that there was we concede that there was no assertion or citation to Federal authority in the State court. What there was, however, which is critical to his claim and which we believe provides the basis for the district court and this court to properly review the issue presented is the citation to California State court authority where in those cases, the California court cited to an applied Federal authority. And this court. In what case or cases are you referring to there? In particular, People v. Jensen at Fort Calab, 4th, 1978. People v. Williams at 269 Calab, 2nd, 879. I'm sorry. You said Jensen, yes? Yes, Your Honor. Okay. Let's take a look at Jensen. Do you happen to recall which page of Jensen the Federal authorities recited? At page 984, Your Honor. I'm with you. 984. Yes. And at page 984, the Jensen court in examining a plea bargain to determine whether or not it was examining the plea bargain to determine whether or not the provision certain provisions infringed upon the defendant's due process rights. And in that case. I'm sorry. Yes, Your Honor. I'm looking at page 984 and I fail to see any Federal authority. I don't see a Supreme Court case. I don't see a anything with Fed second or third in it. I don't see anything with Fed second in it. I don't see anything with USC in it. You know, all that stuff that we. That is correct. So where in Jensen? I see stuff with Calab in it. In Jensen, Your Honor. Cal reporter. I'm sorry. No, I'm sorry. In Jensen. You're correct, Your Honor. In Jensen, we are citing that case and relying on that case in that, in citing to that case, although Jensen of the two, and I hope that we'll address Williams next, because it does have specific citations. But as to Jensen. Is there something in Jensen that helps you? Yes. It's not actual citation to FSUPs or F seconds or actual, actual case law. It cites the ABA standards for criminal justice. And it also references, Your Honor, and points out that the Federal rules of criminal procedure and numerous statutes and rules forbid the involvement of judges in plea discussions, quoting the ABA standards. That is correct, Your Honor. Well, it says the ABA standards reference those. So this is at best a second level derivative. That's correct, Your Honor. Okay. But in. I'm not persuaded by Jensen. Perhaps we could turn to Williams. Perhaps my colleagues are. But why don't we look at Williams? Yes. I have Williams here. In Williams, Your Honor, in analyzing the plea bargaining process. Yes. The court. Yes. Page 884. 884.  Okay. Let me just look to 884, okay? Yes. And 884. Okay. Let's look at something, SDNY. Beginning at 884, the citation to United States ex rel. Elksness v. Gilligan. That's the initial citation in discussing improper judicial participation in plea negotiations. And then later in that discussion on page 885, the court cites to a United States Supreme Court case and this case of this circuit, Von Moltke v. Gillius, Gillius, 332 U.S. 7. That's an F-sub case from the Southern District of New York, 1966. The initial case, yes, Your Honor. The Gilligan case. Okay. And is there some other? Later. Yes, Your Honor. On the following page. University of Chicago Law Review. That's federal. The following page, Your Honor. At least national. Yes. I'm sorry. Go ahead. No. If Your Honor continues to page 885. Von Moltke in their footnote. And Munich. Well, but what that stands for is federal, the footnote says, under the impetus of the Federal Rules of Criminal Procedure calls for more detailed judicial involvement in an acceptance of a guilty plea, citing Von Moltke. This seems to cut exactly the other way. These are federal authorities standing for the proposition that federal judges need to get more involved in plea processes, not enough to just cite federal authorities. You have to cite federal authorities that apply the rule of law you would like us to apply, and the rule of law you are seeking to have applied is the rule of law that says that there's a due process violation if the judge gets too deeply involved. Yes. Well, the Gilligan case does do that. Indeed, it's the Southern District of New York case, but specifically it is on point in having been cited for the proposition that too much judicial participation or activity. I take your point. You've got 2 minutes and 14 seconds. Thank you, Your Honor. So this is your anchor. This is your federal anchor. It is, Your Honor. And we would submit, Your Honor. I'm sorry. Just so I understand. Williams was cited by your client. Yes. Before the court of appeal? Yes, Your Honor. Okay. Now tell us what substantively. Okay. And again, just to finalize on that point, Your Honors, if Your Honors do examine the other cases on this point, Your Honors will find that a number of other circuits, this is the only circuit yet to examine this specific issue, but the majority of other circuits have found that even references as minimal as the ones cited here are sufficient to establish a jurisdiction and to establish the federal ability to obtain federal court review. It's almost a formality. When there's been a due process violation, Your Honor, we would submit that the most minimal of reference in the state court should be sufficient for this court and for this district court to take review of the case and to remedy a violation of the magnitude of a constitutional violation. In the minute and 8 seconds left, what is your substantively? Basically, it is undisputed here, Your Honors, that the trial court participated actively in the plea negotiations. There's no dispute there. It's also undisputed that the plea offered by the judge and taken, accepted by Mr. Murray, was in fact undermined and undercut the position of the prosecutor. The court of appeals and subsequently the district court improperly and erroneously, completely erroneously ruled. I'm sorry. I thought you were going to answer the question that Ms. Schwartz asked. What is the – not simply what you think the judge did wrong, but where is the controlling Supreme Court authority that would say that what the judge did here was a violation of due process? Yes. Which is an AEDFA case, right? I'm sorry. This is an AEDFA case. Yes. So we are governed by that standard as the Supreme Court keeps reminding us. That is correct, Your Honor. And the – In procuring opinions. That's true, Your Honor. So we have to find some Supreme Court case that we can say – fairly say that the district judge – I'm sorry, what the trial judge, what the Supreme Court judge did here violates the clear mandate of Supreme Court cases. And what is that case? It goes back as far as the Boykin v. Alabama case in 1969. In fact, he's not dealing specifically with a state prisoner's – What's your best Supreme Court case? The one that comes the closest. If we're going to find a penumbra from it or an emanation, this is the one – this is it. Yes, Your Honor. Boykin is going to be very difficult for you. That would be Johnson v. Zerbst as far back as 1938, the Johnson case, 304 U.S. 458. Okay. Thank you. If we disagree with you and find that the claim was not exhausted, what should we do? Should the Court find that the claim is not exhausted, unfortunately, by sending it back down? And on that basis, the time has lapsed. And there would not be, I believe, a sufficient amount of tolling time for purposes of allowing him to exhaust that claim. You couldn't go back to the State court, is that what you're saying? That's correct, Your Honor. You're not asking for a federally v. Paskett remand to exhaust? I'm sorry, Your Honor? You're not asking for a federally v. Paskett-type remand? No. Where the case is held at the District Court of Appearance? No, Your Honor. Because you can't exhaust the State court anyway. That is correct. It would be pointless. That's correct. Thank you. Thank you. Good morning, Your Honors. May it please the Court. Robert Foster, Supervising Deputy Attorney General for Respondent. As some of the questions from the bench implied, the issue appellant tries to bring today is both unexhausted and procedurally barred. It's unexhausted because it was never presented as a Federal due process claim to the California Supreme Court. As Judge Kaczynski, I think, pointed out by his questions, it is at best a mild passing reference in a case cited by appellant. I don't think that puts the California Supreme Court on notice that he's raising a Federal due process claim. Secondly, the claim is procedurally barred. If you look at Excerpt of the Record 55, which is the opinion of the California Court of Appeal, Fourth Appellate District Division 2, it specifically says this claim is barred because he never objected below. That's the procedural bar. So I think those two factors ought to be controlling in this Court. The second point is a little problematic. How so, Your Honor? I mean, the very claim that he raises is one of undue judicial overbearing. So he finds himself sort of having his arm twisted by the State judge. It's hard to say I object. Well, two things, Your Honor. His arm wasn't being twisted by the judge. He was twisting this judge. The judge said … I can just see it. If you recall, too, Your Honor, this happened across a number of days. Did he have manacles on while he was doing it? I'm sorry, Your Honor? I can just see it. Did he have manacles on? Your Honor, if you recall, though, the judge simply made the comment that of an indicated sentence, because they went on to other matters. The defendant brought them back to that topic. They talked about it again. There was another hearing a couple days later, and the defendant brought it up again. There's no arm twisted. Anybody looking at that transcript would say the judge was bargaining and selling the defendant what he could or could not do for the defendant. I mean, it's a ridiculous position for you to take to say that he should have objected. Judge, you're coercing me, but I agree to your coercion. You ought to drop that. It's just that California law says non-women. I'll drop it, Your Honor, although I'll disagree with you if I may respectfully. Be realistic and imagine. I see transcripts all the time, Your Honor. Now, let's look at the facts. Wasn't there coercion exerted? No, Your Honor. There was not coercion exerted. What was it? Trial court gave an indicated sentence, which it's allowed to do under California law. He had the option of taking it or leaving it, and instead he starts negotiating and managed to get the judge to come down a year. Where is the coercion? If there were coercion, you'd expect the judge to say, indicated sentence of 11, and he'd go, I'll take it. This man has been through the system so often, he sits there and across a number of days negotiates. Once before. Yes, Your Honor. But it's very clear. I'm sorry, Your Honor. Overkill doesn't help you, you know. I think it's clear he was not coerced, Your Honor. If you look at his conduct, he's actively countering everything that the trial court judge did and said. What's your reading of Boykin? The due process applies to plea bargains, but it does not talk about the issue of the involvement of the judge. And I think that's the problem. Under AEDPA, the appellant has to show that it was contrary to clearly established Supreme Court authority. As the federal magistrate judge pointed out, there is no such clearly established federal authority from the United States Supreme Court saying that the state trial judge may not participate in this kind of activity. What if the judge had used something that's closer to actual coercion? What if he had said to him, look, son, you accept a plea bargain because if you go to trial on this, I'm going to give you double the sentence. If you get convicted, you're going to get double the sentence. Then you're threatening him with a penalty for exercising his right to trial. And there are both state and federal cases indicating that if you say to him, I don't know the answer to that off the top, Your Honor. If it's important, I can submit additional authority. But that isn't what happened here. Well, of course not. That's why it's a hypothetical. Of course, Your Honor. I think there would be a problem. You're establishing limits to your argument. Yes, Your Honor. So if the judge threatens him or not threatens him, just says, look, this is the deal here. You take 10 years. I don't know what the sentence here was. Possibly 20 years. You take 10 years now or if you go to trial, you get 20. That would be coercion. I think there would be a problem with that. You wouldn't argue, would you, at that point that this wasn't a violation of clearly established Supreme Court authority? Probably not, Your Honor. Probably not. Well, because it's a hypothetical, you haven't given me enough details to flesh it out, Your Honor. But assuming that's the basic court, no. But that isn't what happened here. And I'm not trying to get you to erect a rule that says it goes that far. All I'm saying is I do these facts. I realize that's not what happened here. Okay. But I'm sort of working my way to what's happened here. I understand, Your Honor. If you keep talking, you're not going to get a chance to answer my question. So, let's say the judge doesn't say this is the deal. You're going to get double the sentence. But I say, you know, if you go to trial, Your Honor, I'm going to hear a lot more evidence about the bad things you did. And, you know, when I hear evidence about witnesses, and I see them sit there crying on the stand about terrible things that happened to them, sometimes I get moved. You know, I get moved, and sometimes that causes me to give you a much more severe sentence. But right now, it's just sort of a cold racket. Now, you can weigh that. You know, I can't tell you what's going to happen. But very often when I see the witnesses, I just tend to give a higher sentence. Would that be coercion? No, Your Honor. Just telling the facts? Just on those facts, it would not, Your Honor. Because the judge is just giving him a roadmap for the future? Yes, Your Honor. And you think that's a viable distinction between those two hypotheticals? Yes, Your Honor. That's where you sort of stake your outer limits of what you think due process requires? Yes, Your Honor. Because in the first instance, the judge has said, you will get 20 years, say, if you go to trial and are found guilty. In the second hypothesis you gave me, hypothetical you gave me, he's simply indicating the potential of what may or may not happen. He hasn't made up his mind. He hasn't committed to a particular sentence. In the first hypothetical, he has. If you have a defendant sitting there with his life on the line, and the judge says something like that to him, wouldn't figure the judge is telling him, you know, I am going to tell you what I'm going to do, but I'm not going to say it in so many words because I read Supreme Court cases just like the Court of Appeal does, and so I'm not going to say that, but I'm just going to warn you what happens. You think that's? Isn't that the problem with these things? Isn't the whole problem with having judges get involved in plea bargaining that it's very hard to draw a distinction between a threat and a mere inducement? And, in fact, because of the power that a judge has over the prisoner, isn't almost any kind of give and take inherently a threat? No, Your Honor. I don't think any kind of give and take is inherently a threat. Well, can we take the actual case? Yes, Your Honor. A little exchange. To be fair, I'll give you back the 12, but I'm not going to give you less than the 12, so I'll let you talk to your lawyer. Is that a threat? No, because it was in part of the negotiations where he's basically said, well, Your Honor, you said 12. I'd go for it if it were 10, and this is part of the give and take back and forth, Your Honor. But if he doesn't take it and he's going to go to trial, he won't get the 12. No, that's the risk any defendant takes, Your Honor, which is if you go to trial and lose, you're looking at a potential maximum sentence. But the trial court hasn't committed itself to him. He simply pointed out, as Judge Kaczynski said, the roadmap. And then after the break, I understand that after talking to your lawyer, I agreed to take off a year. Mm-hmm. So the judge agreed, he made the bargain. That wasn't collusion? No. No? No. It's not coercion because – Do you think that's a normal practice for a state judge? I'm not sure if I'd use the word normal. It is acceptable under California law, and I've seen nothing – Have you seen a number of those? I've been with the office 30 years, and I have seen a number of them over that period of time, Your Honor. There is the published authority we cited in the brief upholding a California judge giving an indicated sentence. Now, as Judge Kaczynski's hypothetical makes clear, it could be done in such a way as to be a problem, but it was not done in a way to be a problem in this case. I'm sorry. I don't know that you answered Judge Noonan's question, at least not as I understand it. I think what Judge Noonan was asking you, if I may, is have you ever seen a case where the judge dickered with the defendant, said, okay, I'll give you less, you know, went back and forth. And your answer was, I've seen a number of cases where there's been an indicated sentence. Now, if I understand correctly, and this is sort of a state term, indicated sentence, indicated sentence is where the judge says the sentence is X, take it or leave it. And I think Judge Noonan's question had to do not with an indicated sentence, but with a – like the kind of thing here, Ed, where the judge went back and forth. So let me just rephrase the question or restate the question. Have you seen a lot of cases where judges have done this, going back and forth, say, okay, I'll let you go, I'll go to the 12, but there's actual bargaining going on from the bench. I have, Your Honor, two or three. Your Honor, I'm sorry I didn't answer your question. I thought I was being responsive. But, yes, I have seen instances in California. It is not as common as – Have any of them held an appeal? No, Your Honor. This is the first case I've seen reach this court involving – No, no, I mean in the court of appeal. In the California court of appeal? There's only one court of appeal. Where are the court of appeals? I have seen it go to the California court of appeal, and those judgments have been affirmed, Your Honor. In this case, did the court of appeal make a determination as to whether there was coercion or not? Yes. The California court of appeal found there was no coercion based upon the facts. So that would be a fact-finding by which we're bound. I believe so, Your Honor. That's unreasonable. Yes, Your Honor. Finally, I'd like to close by pointing out that counsel today started telling you about the need for an evidentiary hearing. I think that issue is additionally waived because there's no indication at any time in the district court that the appellant asked for such a hearing. Thank you. Unless the Court has any other questions, we will submit. Thank you, counsel. In case you saw it, you can submit it. The next argument in Naranjo v. Rowe. Counsel here?
judges: Kozinski, Noonan, Schwarzer